Joshua R. Stickell, Esq. (NY SBN # 6254437)
Rivera Julka Law Group, PC.
17 W. Main Street,
Bay Shore, NY 11706
Telephone: (631) 647-9040
Email: joshua@riverajulka.com
*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

MARTINEZ ESQUIVEL, Porfirio
Alien #241-102-192,

    Petitioner,

      v.

PAMELA BONDI, in her official capacity as Attorney
General,

KRISTI NOEM, in her official capacity as Secretary of
the Department of Homeland Security,

U.S. DEPARTMENT OF HOMELAND SECURITY,

JOSEPH CARDINALE, in his official capacity as Acting
Field Office Director of the New York Field Office for
U.S. Immigration and Customs Enforcement,

TODD LYONS, in his official capacity as Acting ICE
Field Office Director,
    Respondents.

Case No.

**PETITION FOR WRIT OF
HABEAS CORPUS**

## TABLE OF AUTHORITIES

**Cases**

603 U.S. 369, 395, 401 (2024). ...................................................................................22

8 U.S.C. § 1103(a)...............................................................................................7, 8

8 U.S.C. § 1226 ........................................................................................................8

8 U.S.C. § 1226(c)..................................................................................................17

*Almeida-Amaral v. Gonzales*, 461 F.3d 231 (2nd Cir. 2006). ...............................13

*Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) .......10

*Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) ..............................................6

*Buenrostro-Mendez v. Bondi*, No. 25-cv-20496. ---- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026)..........................................................................................................4

*Chipantiza-Sisalema v. Francis*, 2025 WL 1927931 (S.D.N.Y. July 13, 2025)..............32

*City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) ..............................................11

*Cotzojay v. Holder*, No. 11-4916 (2d Cir. 2013)..............................................13, 26

*Demore v. Kim*, 538 U.S. 510, 523 (2003).............................................................13

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) .......................24

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)....................................24

*Gallegos v. Haggerty*, 689 F.Supp. 93 (N.D.N.Y. Apr. 12, 1988)........................13

*Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) ...............10, 14

*I.N.S. v. Delgado*, 466 U.S. 210, 235 (1984)........................................................13

*J.U. v. Maldonado,* No.25-CV-04836, 2025 WL 2772765 3* (E.D.N.Y. Sept. 29, 2025)..6, 10, 17

*Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)....................................9, 16, 19, 28

*Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025)...............................................................................................passim

*Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026)...............................................................................3, 9, 12, 21

Mathews v. Eldridge ...........................................................................14, 27, 28, 30

*Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) ............................................24, 26

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) ...................................................................30, 31

*Nat. Res. Def. Council, Inc. v. FAA*, 564 F.3d 549 (2d Cir. 2009) ......................................24

*Nevarez Jurado v. Freden*, No. 25-cv-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025). 10

No. 25-CV-6336, 2025 WL 3277677, 4*(E.D.N.Y. Nov. 25, 2025) .....................................17

No. 25-CV-7233, 2025 WL 3040142, 4* (S.D.N.Y. Oct. 28, 2025) .....................................18

*O-J-M- v. Bostock*, 2025 WL 1943008, at *1 (D. Or. July 14, 2025) ...................................32

*Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) .........................................................30, 31

*Quintanilla v. Decker*, No. 1:2021-cv-00417, Doc. 12 at 3 (S.D.N.Y. Feb 22, 2021) ...................6

*Reno v. Flores*, 507 U.S. 292, 306 (1993) ....................................................................13

*Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) ...............................................................6

*Sarmiento Guerrero v. Noem*, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov.18, 2025) . 10, 17

*U.S. v. Kone*, 591 F.Supp.2d 593, 604-605 (S.D.N.Y. Nov. 5, 2008) ...............................12

*U.S. v. St. Kitts*, 742 F.Supp. 1218 (W.D.N.Y. Aug. 23, 1990) ..........................................13

*Ulloa Montoya v. Bondi*, No. 25-CV-06363, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025).. 10, 32

*United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) .......................................12

*United States v. Vasquez*, 638 F.2D 507, 520 (2d. Cir. 1980) ..........................................26

*Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014) ........................................22

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) .........................................................passim

**Statutes**

. 8 U.S.C. § 1225(a) .........................................................................................................9

28 U.S.C. § 1331 ............................................................................................................6

28 U.S.C. § 1657(a) ........................................................................................................6

28 U.S.C. § 2243 .........................................................................................................6, 30

5 U.S.C. § 706 ..............................................................................................................11

5 U.S.C. § 706(2)(A) ...............................................................................................23, 24, 26

5 U.S.C. § 706(2)(C) ........................................................................................................ 11, 23

5 U.S.C. §§ 551–706 ........................................................................................................ 11, 21

8 U.S.C. § 1226(a) ............................................................................................................. 3, 20

8 U.S.C. § 1231(a)–(b) ............................................................................................................ 8

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) ............................................................ 11, 12

U.S.C. § 2243 ........................................................................................................................ 31

**Other Authorities**

"Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of
Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312 (Mar. 6, 1997) .................... 25

Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No.
104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585 ............... 8

**Regulations**

8 C.F.R. § 235.1(a) ................................................................................................................. 9

8 C.F.R. § 236.1(d)(1) .......................................................................................................... 25

**Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 2 ..................................................................................................... 6

## Table of Contents

**PETITION FOR WRIT OF HABEAS CORPUS** ...................................................................0

**INTRODUCTION** ...................................................................................................................1

**JURISDICTION, VENUE, EXHAUSTION** ..........................................................................5

**PARTIES** ................................................................................................................................7

**LEGAL BACKGROUND** .....................................................................................................8

    *A.    The Immigration and Nationality Act* ...........................................................................8

    *B.    The Administrative Procedure Act (APA)* ..................................................................11

    *C.    The Fourth Amendment* ..............................................................................................12

    *D.    The Fifth Amendment* .................................................................................................13

**FACTS** .................................................................................................................................14

**ARGUMENT** .......................................................................................................................16

    *A.    The Respondents Lack Statutory Authority to Detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) Because He was Arrested in the Interior and Was Not "Seeking Admission* .....16

    *B.    As Applied Here, the Petitioner was Not "Seeking Admission" When Arrested Years After Entry While Walking Home in Long Island, New York* ...............................................19

    *C.    The Petitioner is a Member of the* Maldonado Bautista *"Bond Eligible Class," and Therefore Must be Treated as Detained Under § 1226, not § 1225, and the Respondents Must Provide Bond Consideration.* .....20

    *D.    Detaining the Petitioner Under § 1225(b)(2)(A) Is "Not in Accordance with Law" and "In Excess of Statutory Authority" in Violation of the APA.* .....21

    *E.    The Respondents' Policy of Treating Interior Arrests as Mandatorily Detainable Under INA § 1225(b)(2)(A) Without a Bond Hearing Is Arbitrary and Capricious in Violation of the APA* 24

F.    The Respondents' Initial Seizure of the Petitioner Violated the Petition's Fourth Amendment Rights ...................................................................................................... 26

G.    The Respondents' No-Bond Detention of the Petitioner Violates His Fifth Amendment Due Process Rights ......................................................................................... 27

H.    The Court Should Order Immediate Release (Not Merely a Bond Hearing) Because Unlawful Executive Detention, and a "Do-Over" Bond Hearing Would Not Cure the Ongoing Constitutional Harm ....................................................................................... 29

**PRAYER FOR RELIEF** ................................................................................................ 31

**INTRODUCTION**

1.    Petitioner Porfirio Martinez Esquivel (hereinafter "Petitioner" or "Porfirio") has resided in the United States for more than twenty (20) years after entering without inspection in approximately 2005. On February 26, 2026, at approximately 8:40 AM., Petitioner left his residence to go to work in Long Island, New York. Shortly thereafter, several Immigration and Customs Enforcement ("ICE") officers began following him. Petitioner returned to his home, where officers detained him in the front yard. His partner reported that the officers did not present a judicial warrant or any document authorizing entry or arrest.

2.    At the time of his arrest, the Petitioner had been hospitalized a week earlier due to serious cardiac complications. Medical records show he has a coronary artery blockage and recently underwent an interventional cardiac procedure through his arm to address the obstruction. He was also diagnosed with fluid in his lungs and required immediate follow-up care. The Petitioner had appointments scheduled for March 2 and 3, 2026, to discuss ongoing cardiac treatment and the possible placement of a Holter monitor to assess suspected arrhythmias. Petitioner informed the ICE officers about his medical condition and the urgent need for medication and follow-up care. Nevertheless, officers took him into custody and did not allow him to retrieve his prescribed medications, which are still in his vehicle.

3.    At the time of this filing, Petitioner is detained at the Nassau County Correctional Facility in New York. In counsel's experience, Respondents frequently transfer detainees out of state after seventy-two (72) hours of custody. Because Petitioner was detained on February 26, 2026, he faces imminent transfer to a remote detention facility, potentially outside this District. Counsel has received no written notice of any planned transfer, destination, or administrative justification. Transfers under these circumstances substantially impair attorney access, disrupt urgent medical continuity of care, and undermine this Court's jurisdiction over emergency habeas claims.

1

4.    This filing is necessarily emergent. Counsel has not yet received charging documents, custody determinations, or complete detention records. Petitioner seeks narrowly tailored injunctive relief to preserve the status quo, prevent transfer outside the Eastern District of New York, ensure immediate access to necessary medical treatment and medication, and allow this Court to adjudicate the legality of his detention on an adequate record.

5.    Petitioner brings this habeas action under 28 U.S.C. § 2241 because ICE is detaining him without lawful statutory authority and in violation of the Constitution. Petitioner has lived in the interior of the United States for more than two decades. He is not an "arriving alien" and is not presently "seeking admission" within the meaning of 8 U.S.C. § 1225(b). To the extent Respondents intend to classify him under § 1225(b)(2)(A) to justify mandatory detention without bond, that interpretation is contrary to the text, structure, and purpose of the Immigration and Nationality Act. At most, he is subject to detention under 8 U.S.C. § 1226(a), which requires an individualized bond determination.

6.    Moreover, Petitioner's removal proceedings were terminated by an Immigration Judge on December 3, 2024. He is currently scheduled for a master calendar hearing on March 3, 2026. ICE's sudden arrest—without a demonstrated flight risk, without danger to the community, and despite an acute medical condition—raises serious statutory and due process concerns, particularly given his long residence, stable family ties, and pending court date.

7.    Petitioner seeks emergency relief in the form of a Temporary Restraining Order and a Preliminary Injunction prohibiting transfer outside this District, ensuring immediate access to prescribed medication and necessary cardiac care, and granting: (1) immediate release; or, in the alternative, (2) a prompt bond hearing before this Court at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses a danger or a flight risk; or, in the further alternative, (3) a prompt, constitutionally compliant bond hearing before the Immigration

2

Court at which the Government bears the burden of proving danger or flight risk by clear and convincing evidence, with consideration of ability to pay and alternatives to detention. Without intervention from this Court, Petitioner faces not only unlawful detention but also the real and immediate risk of medical harm and jurisdictional defeat through transfer to a jurisdiction where bond eligibility may be categorically denied despite his status as a *Maldonado Bautista*-eligible class member.

8.    This Petition also seeks to enforce the Petitioner's rights under a final federal judgment that the Respondents have openly refused to honor. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), the court entered a final declaratory judgment holding that members of the certified Bond Eligible Class are detained pursuant to 8 U.S.C. § 1226(a), and therefore may not be categorically denied consideration for release on bond under 8 U.S.C. § 1225(b)(2)(A).

9.    Although the court in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), entered final judgment declaring that Bond Eligible Class members are detained pursuant to 8 U.S.C. § 1226(a)—and expressly vacated DHS's July 8, 2025 "Interim Guidance Regarding Detention Authority for Applicants for Admission"—serious uncertainty remains as to whether a bond hearing alone would meaningfully vindicate Petitioner's rights. More recently, in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), the court vacated EOIR's reliance on *Matter of Yajure Hurtado* as a vehicle for continuing mandatory detention under § 1225(b), precluded Respondents from rearguing issues already decided in the class action, ordered nationwide class notification, and admonished Respondents for deliberate efforts to evade and undermine the Court's rulings.

10.    At the same time, recent Fifth Circuit authority has created a powerful incentive for the Government to position detainees within that circuit. In *Buenrostro-Mendez v. Bondi*, No. 25-cv-

3

20496. ---- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026), the Fifth Circuit endorsed a broad interpretation of detention authority under 8 U.S.C. § 1225(b), rejecting arguments materially similar to those accepted in *Maldonado Bautista* and limiting habeas relief for interior-arrested noncitizens classified as "applicants for admission." That decision sharply diverges from the reasoning adopted by the Central District of California and the vast majority of district courts, effectively restoring the Government's preferred mandatory detention framework within the Fifth Circuit.

11.    Despite the Central District of California rulings, public reporting confirms that EOIR leadership has instructed immigration judges to continue denying bond jurisdiction in cases that could be transferred to the Fifth Circuit, creating what has been described as a "race" dynamic to position detainees in jurisdictions perceived as more favorable to the Government's detention theory.[1] Judge Sykes has expressly admonished Respondents for deliberate avoidance and disobedience of her orders, recognizing the Government's ongoing effort to sidestep the class judgment through strategic litigation positioning.

12.    Thus, even though Petitioner is a *Maldonado*-eligible class member based on his decades-long interior presence and arrest within the United States, there is a substantial and concrete risk that Respondents will transfer him to a Fifth Circuit detention facility and deny bond based on circuit-specific interpretations that the class judgment has already rejected and vacated. Under these circumstances, a theoretical bond hearing—particularly one that may be nullified by transfer—does not provide adequate protection.

13.    In light of Petitioner's acute cardiac condition, the imminent risk of transfer, the Government's documented resistance to the class judgment, and the real possibility of jurisdictional manipulation, immediate release—rather than reliance on a speculative bond hearing—is necessary

---

[1] *See* Maia Spoto and Megan Crepeau, *Immigration Judge's Guidance Sets Up Race to Avoid Fifth Circuit* BLOOMBERG LAW (Feb. 20, 2026), https://news.bloomberglaw.com/litigation/immigration-judges-guidance-sets-up-race-to-avoid-fifth-circuit.

to prevent irreparable medical harm and to preserve this Court's ability to provide meaningful and effective relief.

14.    For the foregoing reasons, Petitioner respectfully requests that this Court (1) issue an immediate Temporary Restraining Order prohibiting Respondents from transferring Petitioner outside the Eastern District of New York absent prior authorization from this Court; (2) order Respondents to ensure Petitioner's immediate access to all prescribed cardiac medications, necessary medical treatment, and continuity of care consistent with his recent hospitalization and scheduled follow-up appointments, (3) grant the Petition for Writ of Habeas Corpus and order Petitioner's immediate release from custody, (4) in the alternative, if the Court declines to order immediate release, conduct a prompt bond hearing before this Court at which the Government bears the burden of proving by clear and convincing evidence that Petitioner poses a danger or flight risk; or, in the further alternative, order a prompt, constitutionally compliant bond hearing before the Immigration Court at which the Government bears the burden of proving danger or flight risk by clear and convincing evidence, with full consideration of Petitioner's ability to pay and alternatives to detention; (5) order Respondents to produce all custody and charging documents relevant to Petitioner's detention; and (7) grant such other and further relief as this Court deems just and proper to preserve its jurisdiction and prevent irreparable harm.

15.    Absent immediate intervention, Petitioner faces unlawful detention, imminent transfer designed to defeat meaningful review, and serious medical risk stemming from an acute cardiac condition. The equities and the law weigh decisively in favor of preserving the status quo and granting emergency relief.

## JURISDICTION, VENUE, EXHAUSTION

16.    This Court has jurisdiction over this petition under 28 U.S.C. § 2241 because Petitioner is "in custody" within this District and challenges the legality of his ongoing civil immigration

5

detention. The Court also has jurisdiction under 28 U.S.C. § 1331 because the Petition raises claims under the Constitution and laws of the United States, including the Immigration and Nationality Act ("INA") and the Administrative Procedure Act ("APA"), as well as relief under the Fourth Amendment's protections against unlawful seizures and the Fifth Amendment's Due Process Clause, which independently supports habeas jurisdiction. See *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Petitioner also invokes the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, as an independent constitutional guarantee of meaningful habeas review.

17.    Venue and personal jurisdiction are properly situated in the Eastern District of New York because Petitioner is detained at the NYC Holding Room in Federal Plaza, New York, which lies within the Eastern District of New York; the district of confinement is therefore the proper forum. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

18.    The petition is properly brought and should be heard forthwith under 28 U.S.C. § 2243 (court to "summarily hear and determine" habeas) and given priority under 28 U.S.C. § 1657(a).

19.    While exhaustion is often required before immigration detention may be challenged under § 2241, it is "prudential," not a "statutory requirement," and may be excused when it would provide no genuine opportunity for adequate relief, cause irreparable injury without immediate judicial intervention, or be futile, or when substantial constitutional questions are presented. *J.U. v. Maldonado*, No.25-CV-04836, 2025 WL 2772765 3* (E.D.N.Y. Sept. 29, 2025), *citing Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003); *Quintanilla v. Decker*, No. 1:2021-cv-00417, Doc. 12 at 3 (S.D.N.Y. Feb 22, 2021).

20.    Although courts generally require administrative exhaustion in immigration detention cases, exhaustion is prudential—not jurisdictional—and may be excused where pursuing administrative remedies would be futile, cause irreparable harm, or fail to provide an adequate remedy. Exhaustion should be excused here for multiple independent reasons. First, given Respondents'

6

documented noncompliance with the final judgment and vacatur orders in *Maldonado Bautista*, as well as EOIR's continued resistance to recognizing bond jurisdiction in similarly situated cases, further pursuit of administrative remedies would be futile. Second, Petitioner faces imminent and irreparable harm: he suffers from an acute cardiac condition, recently underwent an invasive procedure, was denied access to prescribed medication upon arrest, and risks interruption of urgent follow-up care if transferred. Administrative processes cannot meaningfully address or prevent that harm on an emergency timeline. Third, Respondents' practice of rapid transfer—particularly to jurisdictions where bond eligibility may be categorically denied—threatens to defeat this Court's jurisdiction before administrative review could conclude. Where administrative remedies are inadequate to prevent constitutional injury, jurisdictional manipulation, and serious medical risk, prudential exhaustion does not bar immediate habeas review under 28 U.S.C. § 2241.

## PARTIES

21.    The Petitioner, Porfirio Martinez Esquivel, is currently in ICE custody.

22.    Respondent, Kristi Noem, is the Secretary of DHS, and she is sued in her official capacity. The Secretary of DHS is responsible for administering and enforcing immigration laws. 8 U.S.C. § 1103(a).

23.    Respondent, Pamela Bondi, is the Attorney General of the United States and is sued in her official capacity. The Attorney General is responsible for the fair administration of the laws of the U.S.

24.    Respondent, the Executive Office for Immigration Review (EOIR), is a division of the DOJ that conducts removal/bond hearings and appeals through the Immigration Court and the Board of Immigration Appeals (BIA).

25.    Respondent, Todd Lyons, is the Acting Director of ICE and is sued in his official capacity. ICE is responsible for the Petitioner's detention.

7

26.     Respondent Joseph Cardinale is the Immigration and Customs Enforcement Field Office Director at the ICE New York city field office and is sued in his official capacity.

## LEGAL BACKGROUND

*A.  The Immigration and Nationality Act*

27.     The Immigration and Nationality Act ("INA") establishes three types of detention for noncitizens. First, under 8 U.S.C. § 1226, the government can detain noncitizens during regular non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a). Individuals detained under §1226(a) are eligible for bond hearings, as outlined in 8 C.F.R. §§ 1003.19(a) and 1236.1(d), while those arrested, charged with, or convicted of certain offenses are subject to mandatory detention under 8 U.S.C. §1226(c). Second, under 8 U.S.C. § 1225(b)(1), noncitizens subject to expedited removal are detained. Section §1225(b)(2) extends mandatory detention to other applicants for admission who are not covered by expedited removal. Lastly, 8 U.S.C. § 1231(a)–(b) (post-final-order detention) authorizes the detention of noncitizens with final orders.

28.     This case concerns which statutory classification—§1226(a) or §1225(b)(2)—governs Petitioner's custody. The detention provisions in §1226(a) and §1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. After Congress enacted IIRIRA, EOIR drafted regulations stating that individuals who entered the U.S. without inspection are to be detained under §1226(a). Since then, most EWIs—unless detained by another authority—have been granted bond hearings. This reflects a long-standing policy that treats noncitizens not deemed "arriving" as entitled to a custody hearing before an IJ or another officer.

29.     Sec. 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Its operative provisions focus on inspection and the

8

application for admission. The statute repeatedly uses the present tense when referring to individuals "seeking admission" and contemplates an "examining immigration officer" making an inspection-based determination. 8 U.S.C. § 1225(a), (b)(2)(A).

30.    Critically, § 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission," if the examining officer determines that an alien "seeking admission" is not clearly entitled to be admitted, "the alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). Consistent with that text and structure, federal regulations implementing the inspection framework likewise contemplate that "application to lawfully enter" is made to an immigration officer at a port of entry when the port is open for inspection (or as otherwise designated). 8 C.F.R. § 235.1(a).

31.    Respondents' new policy—treating all noncitizens as §1225(b)(2)(A) applicants for admission even when arrested far from the border—undermines this well-established understanding and violates the statutory scheme. The Supreme Court has held that §1226 governs the detention of noncitizens who entered without inspection and were later apprehended inside the U.S. *See Jennings v. Rodriguez*, 583 U.S. 281 (2018). *Maldonado Bautista v. Santacruz*, which granted a declaratory judgment confirming that bond denial class members are detained under 8 U.S.C. §1226(a), further supports this well-established understanding. No. 5:25-CV-01873-SSS-BFM (C.D. Cal).

32.    In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), the court entered final declaratory judgment holding that members of the certified nationwide "Bond Eligible Class" are detained pursuant to 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2). The court expressly vacated DHS's July 8, 2025, detention guidance.

33.    Subsequently, in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), the court vacated EOIR's reliance on *Matter of Yajure Hurtado* as a mechanism for continuing § 1225 mandatory detention, precluded Respondents from

9

relitigating issues already resolved in the class action, and ordered nationwide notice to ensure eligible class members are informed of their bond rights.

34.    These rulings align with the reasoning adopted by district courts within this Circuit. Courts in the Eastern District of New York have emphasized that § 1225(b)(2)(A)'s "seeking admission" language has operative meaning and cannot be read out of the statute. See, e.g., *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765, at *7 (E.D.N.Y. Sept. 29, 2025) (rejecting the theory that a long-present interior arrestee remains perpetually "seeking admission" and explaining that §§ 1225 and 1226 operate as structurally distinct frameworks). Sister courts in this District have likewise described the two provisions as mutually exclusive detention authorities rather than interchangeable tools available at DHS's discretion.

35.    EDNY has emphasized that § 1225(b)(2)(A)'s "seeking admission" language has meaning and is not surplusage: in *J.U. v. Maldonoado*, the court analyzed the statutory text and explained why treating a long-present interior arrestee as perpetually "seeking admission" improperly collapses the statute's inspection/admission framework into a roving interior detention authority. No.25-CV-04836, 2025 WL 2772765, 7* (E.D.N.Y. Sept. 29, 2025). A central feature of the emerging NY district-court case law addressing this precise dispute is that §§ 1225 and 1226 are structurally distinct and operate in different contexts. Sister courts in NY have described the provisions as "mutually exclusive" frameworks rather than overlapping authorities that DHS may select at will.[2] This includes the EDNY district courts.[3]

---

[2] *Alvarez Ortiz v. Freden*, No. 25-cv-960-LJV, 2025 WL 3085032 (W.D.N.Y Nov. 4, 2025); *Nevarez Jurado v. Freden*, No. 25-cv-943-LJV, 2025 WL 3687264 (W.D.N.Y. Dec. 19, 2025) (ordering release); *Padilla Molina v. Deleon*, No. 2:25-cv-06526-JMA (E.D.N.Y. Dec. 23, 2025); *J.G.O. v. Francis*, No. 25-CV-7233-AS, 2025 WL 3040142 (S.D.N.Y. Oct. 28, 2025); *Romero Perez v. Francis*, No. 25-CV-8112-JGK, 2025 WL 3110459 (S.D.N.Y. Nov. 6, 2025); *Villegas ex rel. Guzman Andujar v. Francis*, No. 25-CV-9199-JLR, 2025 WL 3215597 (S.D.N.Y. Nov. 18, 2025); *Yao v. Almodovar*, No. 25-cv-09982-PAE, 2025 WL 3653433 (S.D.N.Y. Dec. 17, 2025.

[3] *Ulloa Montoya v. Bondi*, No. 25-CV-06363, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025), *J.U. v. Maldonado*, No.25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025), *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025), *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025), *Sarmiento Guerrero v. Noem*, No. 25-CV-5881, 2025 WL 3214787 (E.D.N.Y. Nov.18, 2025).

10

36.    At the same time, the Fifth Circuit has adopted a broader interpretation of § 1225 detention authority. *See Buenrostro-Mendez v. Bondi*, No. 25-20496, ___ F.4th ___, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (endorsing application of § 1225(b) detention to certain interior-arrested noncitizens charged as applicants for admission). The resulting circuit split underscores that the Government's detention theory is neither settled nor uniform—and further highlights the significance of preserving this Court's jurisdiction over Petitioner's claims.

### B.    The Administrative Procedure Act (APA)

37.    The Administrative Procedure Act (hereinafter "APA"), 5 U.S.C. §§ 551–706, governs agency action taken by DHS and EOIR in administering and interpreting the INA. Under the APA, reviewing courts must "hold unlawful and set aside agency action, findings, and conclusions" that are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right; or (3) in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(A)–(C).

38.    Agency action subject to APA review includes not only formal rules, but also policies, guidance memoranda, and interpretive positions that have legal consequences or bind agency decisionmakers. The Supreme Court has made clear that agencies may not evade APA scrutiny by labeling binding policies as "guidance" or "interpretive." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (defining final agency action reviewable under the APA). The APA independently requires courts to set aside agency action taken "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). This provision applies where an agency asserts regulatory or enforcement power that Congress did not confer, even if the agency claims to be interpreting an ambiguous statute. *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). Further, the Supreme Court has cautioned that detention authority must be grounded in clear statutory authorization, not agency preference. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

11

39.    DHS's July 2025 detention guidance—and EOIR's implementation of that guidance through categorical bond denials—constitute final agency action reviewable under the APA. The Respondent's definitive position has immediate and binding legal consequences: immigration judges are instructed that they lack jurisdiction to conduct bond hearings. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Under *Bennett v. Spear*, agency action is final where it marks the "consummation" of the agency's decision-making process and determines rights or obligations. 520 U.S. at 177–78. DHS's detention policy easily meets that standard.

40.    In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), the court held that DHS's detention policy was "not in accordance with law" and "in excess of statutory authority" under the APA, vacated the July 8, 2025 guidance, and entered declaratory relief on a nationwide classwide basis. Subsequently, in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), the court vacated EOIR's continued reliance on *Matter of Yajure Hurtado*, precluded Respondents from relitigating the detention-authority question, and ordered nationwide class notification to ensure bond-eligible individuals receive notice of their rights.to set aside that action and restore detention decisions to the framework Congress enacted.

C.  *The Fourth Amendment*

41.    The Fourth Amendment guarantees "the right of the people… against unreasonable searches and seizures shall not be violated.". U.S. Const. amend. IV; *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990). In the Eastern District of New York, courts apply established constitutional principles requiring warrants based on probable cause, subject to recognized exceptions. *U.S. v. Kone*, 591 F.Supp.2d 593, 604-605 (S.D.N.Y. Nov. 5, 2008)(stating that "[t]he Constitution explicitly states that 'no Warrants shall issue, but upon probable cause… Probable cause requires more than a 'mere suspicion' of wrongdoing."). This Fourth Amendment protection applies to both citizens

12

and noncitizens. *Cotzojay v. Holder*, No. 11-4916 (2d Cir. 2013). While 8 U.S.C. § 1357(a)(1) authorizes immigration officers to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States," it does not license immigration officials to employ unconstitutional enforcement methods. *I.N.S. v. Delgado*, 466 U.S. 210, 235 (1984).

42.     Under the Fourth Amendment, not all encounters between immigration officials and individuals constitute a seizure. A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave" *U.S. v. St. Kitts*, 742 F.Supp. 1218 (W.D.N.Y. Aug. 23, 1990). Police questioning regarding one's identity, or a request for identification, is, without more, not a seizure for Fourth Amendment purposes. *Gallegos v. Haggerty*, 689 F.Supp. 93 (N.D.N.Y. Apr. 12, 1988). However, when an immigration officer yells a command to stop or physically restrains an individual, a seizure has occurred. *Almeida-Amaral v. Gonzales*, 461 F.3d 231 (2nd Cir. 2006).

### D.  The Fifth Amendment

43.     The Fifth Amendment constrains civil immigration detention and states that "No person shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and it safeguards both the substantive liberty interest in freedom from physical confinement and the procedural right to a meaningful opportunity to challenge that confinement. See *Zadvydas v. Davis*, 533 U.S. 678, 690, 693, 721 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Reno v. Flores*, 507 U.S. 292, 306 (1993). In this context, detention is constitutionally permissible only for the recognized purposes of preventing flight and protecting the community, and only when procedures are sufficient to ensure that the government's justification outweighs the individual's liberty interest. *Zadvydas,* 533 U.S. at 690; *Demore*, 538 U.S. at 528.

13

44.    What process is "due" is evaluated using the three-factor test from *Mathews v. Eldridge*: (1) the private interest affected; (2) the risk of erroneous deprivation through existing procedures and the value of additional safeguards; and (3) the government's interest, including administrative burdens. 424 U.S. 319, 335 (1976). The liberty interest in avoiding imprisonment "lies at the heart" of due process; the risk of error becomes significant when detention is based on unexplained custody decisions; and the government's interests are fully compatible with procedures that distinguish justified detention from confinement based on speculation. *Mathews*, 424 U.S. at 335, 348; *Zadvydas*, 533 U.S. at 690.

45.    In the Second Circuit, prolonged civil detention without meaningful process violates fundamental due process principles. *See Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). The *Velasco Lopez* court explained that (1) the government must bear the burden of justifying continued civil detention; (2) the burden must be clear and convincing evidence; (3) detention must be justified by an individualized showing of dangerousness or flight risk; and (4) decision-makers must consider alternatives to detention and the ability to pay. *Id.* 854-55; *see also, e.g., Hyppolite v. Noem*, No. 25-cv-4304-NRM, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

**FACTS**

46.    Petitioner Porfirio Martinez Esquivel has resided in the United States for more than twenty (20) years after entering without inspection in approximately 2005. Since that time, he has lived continuously in New York, established deep family and community ties, and built a stable life in the interior of the United States.

47.    On February 26, 2026, at approximately 8:40 AM. Petitioner left his residence in Long Island, New York, to go to work. Shortly thereafter, several ICE officers began following him. Petitioner returned to his home. ICE officers then detained him in the front yard of his residence in the presence of his partner and their one-month-old infant child.

14

48.    Petitioner's partner reports that the officers did not present a judicial warrant or any other document authorizing entry onto the property or arrest. The family has preserved video footage of the encounter.

49.    At the time of his arrest, Petitioner was recovering from a recent hospitalization. Approximately one week earlier, he had been admitted to the hospital for serious cardiac complications. Medical records reflect that he was diagnosed with a coronary artery blockage and underwent an interventional cardiac procedure through his arm to address the obstruction.

50.    In addition to the arterial blockage, Petitioner was diagnosed with fluid in his lungs and was advised to attend urgent follow-up appointments. He had medical appointments scheduled for March 2 and March 3, 2026, to evaluate his cardiac condition, discuss ongoing treatment, and consider the placement of a Holter monitor to assess suspected arrhythmias.

51.    As of the filing of this Petition, Petitioner is detained at Nassau County Correctional Facility in New York. He has not been provided advance written notice of any planned transfer. Based on counsel's experience, ICE frequently transfers detainees out of state within approximately seventy-two (72) hours of arrest, often without meaningful notice to counsel.

52.    Petitioner's prior removal proceedings were terminated by an Immigration Judge on December 3, 2024. He is currently scheduled for a master calendar hearing on March 3, 2026. He has no known history of violence, no evidence suggests he poses a danger to the community, and he was complying with his court obligations at the time of his arrest.

53.    Petitioner resides with his partner and their one-month-old child. His detention has separated him from his newborn child during a medically vulnerable period in his own recovery.

54.    Petitioner remains in custody despite his acute cardiac condition, missed follow-up appointments, lack of access to prescribed medication at the time of arrest, and the absence of any individualized determination of flight risk or danger.

15

**ARGUMENT**

*A. The Respondents Lack Statutory Authority to Detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) Because He was Arrested in the Interior and Was Not "Seeking Admission"*

55.    The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

56.    ICE has detained Petitioner without an opportunity to request an individualized bond hearing due to the Respondent's interpretation of 8 U.S.C. § 1225(b)(2)(A), a statute that is not applicable to the Petitioner. 8 U.S.C. § 1225(b)(2)(A) mandates detention only in a specific, inspection-based circumstance: "in the case of an alien who is an applicant for admission," "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," the alien "shall be detained" for § 1229a proceedings (emphasis added). This text contains limiting terms that Respondents' position effectively deletes: (1) an "examining" immigration officer, (2) a present-tense individual "seeking admission," and (3) an inspection/admission framework that Congress placed in § 1225 rather than § 1226.

57.    By contrast, 8 U.S.C. § 1226 is the general arrest-and-detention authority for noncitizens already within the United States "pending a decision on whether the alien is to be removed." 8 U.S.C. § 1226(a). The Supreme Court has described § 1226 as authorizing detention of "aliens already in the country pending the outcome of removal proceedings," distinguishing it from § 1225's admission/inspection scheme. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). As such, noncitizens who entered without inspection should be detained under §1226(a), unless they are subject to another mandatory detention provision, such as § 1225(b)(1), § 1226(c), or § 1231.

58.    The present-tense "seeking admission" phrase in the statute is significant and should be looked to when analyzing the limitations of the statute. In *J.U. v. Maldonado*, the EDNY found that the Respondent's argument that every noncitizen who has not been lawfully admitted into the United States continues to be a noncitizen "seeking admission" under § 1225(b)(2)(A) incorrectly equates

16

"applicant for admission" with "seeking admission," which would render § § 1225(b), 1226(c)(1)(A), (D), and (E) superfluous. No.25-CV-04836, 2025 WL 2772765, 8*(E.D.N.Y. Sept. 29, 2025). The court concluded that Respondent's current interpretation of § 1225 would contravene congressional intent and found that § 1226(a)'s discretionary framework applies to all citizens arrested while residing in the United States. Similarly, in *O.F.B. v. Maldonado*, the court rejected the Respondents' statutory interpretation and reasoned that "it only makes sense if you read § 1225 in a vacuum." No. 25-CV-6336, 2025 WL 3277677, 4*(E.D.N.Y. Nov. 25, 2025).

59.    8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an immigration judge. *See* 8 U.S.C. § 1229a. Individuals detained under §1226(a) are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention. *See* 8 U.S.C. § 1226(c). Conversely, §1225(b)(2) applies only to aliens seeking admission after examination by an immigration officer—that is, those *seeking admission*. DHS and the BIA are diverging from the long-established and well-settled interpretation of §1225(b)(2), which has effectively made §1226 obsolete. §1226(c) requires detention for aliens involved in an enumerated crime, including those present in the U.S. without being admitted or paroled. DHS's interpretation would render §1226(c) meaningless, as all noncitizens present without admission would fall under § 1225's mandatory detention authority regardless of criminal charges.

60.    EDNY and its sister courts have also recognized that § 1225(b)(2)'s structure points to a border-related detention. Subparagraph (B) exempts "crewman" and "stowaway," and subparagraph (C) authorizes return to a contiguous territory for certain land arrivals. Those carve-outs concern modes of arrival and immediate border processing, reinforcing that Congress was speaking to people presenting at or near the border, not long-settled interior residents. *Sarmiento Guerroero v. Noem*, No. 25-CV-5881, 2025 WL 3214787, 4*(E.D.N.Y. Nov. 18, 2025). *See also, J.G.O. v. Francis,* finding

17

that "[E]very part of § 1225 suggests that it applies to aliens who are arriving in the country." No. 25-CV-7233, 2025 WL 3040142, 4* (S.D.N.Y. Oct. 28, 2025). Similarly, in *Quituizaca Quituisaca v. Bondi*, 6:25-cv-6527, 2025 WL 3264440, at *3 (W.D.N.Y. Nov. 24, 2025), the court emphasized that § 1225(b)(2)(A) has multiple distinct prerequisites, and that the statutory language "suggests that § 1225(b)(2) applies to individuals stopped at the border—not those … who were already residing in this country." Put simply: if Congress had intended § 1225(b)(2) to authorize mandatory detention without bond for any person DHS could label an "applicant for admission" at any time in the future, the "seeking admission" language and border-arrival context would be surplusage. Courts have refused to read the statute in a way that makes Congress's words meaningless.

61. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), the Central District of California entered final declaratory judgment holding that members of the certified nationwide Bond Eligible Class are detained under § 1226(a) and are not subject to mandatory detention under § 1225(b)(2). The court vacated DHS's July 8, 2025, detention guidance that attempted to reclassify long-present interior arrestees as subject to § 1225(b)(2)(A). In a subsequent order, the court vacated EOIR's reliance on *Matter of Yajure Hurtado* to continue mandatory detention under § 1225 and precluded Respondents from relitigating the detention-authority issue. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026).

62. Petitioner falls squarely within the Bond Eligible Class: he entered without inspection decades ago, has resided continuously in the interior, and was arrested far from any port of entry. He was not examined by an "examining immigration officer" at a border inspection point and was not "seeking admission" at the time of his arrest. The Government's attempt to classify him under § 1225(b)(2)(A), therefore, exceeds statutory authority and conflicts with the plain text and structure of the INA.

18

63.    Although the Fifth Circuit has adopted a broader interpretation of § 1225 detention authority in *Buenrostro-Mendez v. Bondi*, No. 25-20496, ___ F.4th ___, 2026 WL 323330 (5th Cir. Feb. 6, 2026), that decision does not alter the statutory text and does not bind this Court. Within this Circuit, the weight of district authority—and the reasoning of *Maldonado Bautista*—confirms that § 1225(b)(2)(A) cannot be stretched to cover long-settled interior residents arrested years after entry.

64.    Because Petitioner was arrested in the interior after more than twenty years of residence, § 1226(a)—not § 1225(b)(2)(A)—governs his custody. At minimum, he is entitled to an individualized bond determination. Respondents' contrary classification is ultra vires, contrary to law, and cannot justify mandatory detention without bond.

*B. As Applied Here, the Petitioner was Not "Seeking Admission" When Arrested Years After Entry While Walking Home in Long Island, New York*

65.    The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

66.    Petitioner entered the United States once, without inspection, in approximately 2005. He was not apprehended at the border, inspected at a port of entry, or processed through any inspection-based framework under 8 U.S.C. § 1225. Shortly after entry, he settled in New York, where he has resided continuously for more than twenty years. Under the statute as written and as applied by New York federal courts in this scenario, that is § 1226's purview: "aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289.

67.    On February 26, 2026, ICE officers arrested Petitioner in the front yard of his Long Island residence after following him as he left for work. At the time of his arrest, there was no contemporaneous border crossing, no port-of-entry encounter, no inspection by an "examining immigration officer," and no application for admission. He was not presenting himself for entry. He was not at the border. He was not "seeking admission."

68.    Because § 1225(b)(2)(A) does not apply to Petitioner's interior arrest and years-long

19

presence, the Respondents lack statutory authority to hold him in mandatory, no-bond detention under § 1225(b)(2)(A). The proper statutory framework is § 1226(a), which provides for bond eligibility and custody redetermination procedures.

C. *The Petitioner is a Member of the* Maldonado Bautista *"Bond Eligible Class," and Therefore Must be Treated as Detained Under § 1226, not § 1225, and the Respondents Must Provide Bond Consideration.*

69. The Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

70. In *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the court certified a nationwide class of noncitizens who entered without inspection and were later detained in the interior under DHS's July 2025 detention policy (the "Bond Eligible Class"). The Bond Eligible Class includes "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination. *Id.* at *9.

71. After adjudicating the merits, the court entered final judgment declaring, among other things, that "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). The judgment further declares that, under the governing regulations, class members are entitled to bond consideration and (if not released by ICE) a custody redetermination hearing before an immigration judge under the § 1226(a) framework. *Id.*

72. In a subsequent enforcement order, the court vacated EOIR's continued reliance on *Matter of Yajure Hurtado* to deny bond jurisdiction, precluded Respondents from relitigating the detention-authority question resolved in the class action, and ordered nationwide class notification to ensure eligible individuals are informed of their bond rights. *Maldonado Bautista v. Santacruz*, No.

5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026).

73. The Petitioner falls squarely within the category of individuals that *Maldonado Bautista* protects Specifically: (a) the Petitioner entered the United States without inspection and (b) was not apprehended upon arrival – he was instead arrested in the interior of New York, in front of his yard, and (c) the Respondents are not detaining the Petitioner under the statutory exclusions that remove individuals from the class. On these facts, the Petitioner is entitled to the benefit of the court's class-wide declaration.

74. As a class member, Petitioner is entitled to the benefit of the final declaratory judgment. Respondents may not disregard that judgment by recharacterizing him as subject to § 1225(b)(2)(A). The continued classification of Petitioner as a mandatory detainee under § 1225(b)(2) directly conflicts with the class-wide declaration and the vacatur of the July 2025 policy.

75. Accordingly, Respondents' treatment of Petitioner as a § 1225(b)(2) detainee is unlawful as applied to him as a member of the Bond Eligible Class. At minimum, Respondents must treat Petitioner as detained under § 1226(a) and provide prompt bond consideration consistent with the INA and governing regulations. Given the imminent risk of transfer and the documented resistance to compliance in similarly situated cases, this Court should order immediate release or, alternatively, compel compliance with the § 1226(a) framework through a prompt, meaningful bond hearing.

D. *Detaining the Petitioner Under § 1225(b)(2)(A) Is "Not in Accordance with Law" and "In Excess of Statutory Authority" in Violation of the APA.*

76. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

77. The Administrative Procedure Act ("APA"), codified at 5 U.S.C. §§ 551–559, governs procedures in administrative law. The APA authorizes federal courts to (1) decide all relevant questions of law; (2) interpret constitutional and statutory provisions; and (3) determine the meaning or applicability of an agency's action. According to *Loper Bright v. Raimondo*, the APA requires

21

courts to exercise their independent judgment in deciding whether an agency acted within its statutory authority, and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. 369, 395, 401 (2024). Furthermore, a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action ... is entitled to judicial review." 5 U.S.C. § 702. Relief may include "writs of prohibitory or mandatory injunction or habeas corpus." 5 U.S.C. § 703. Courts can "compel agency action unlawfully withheld or unreasonably delayed," §706(1), or "hold unlawful and set aside agency action" that is arbitrary, capricious, contrary to law, or in excess of statutory jurisdiction, § 706(2)(A)–(C).

78.     Applying §1225(b)(2) to Petitioner—an interior arrestee in §1229a proceedings— exceeds statutory authority (§ 706(2)(C)) and is not in accordance with law (§ 706(2)(A)). As discussed above, New York federal courts have rejected the Respondents' attempt to use § 1225(b)(2)(A) as a categorical, mandatory detention regime for individuals arrested in the interior years after entry.[4] The text, structure, and history limit §1225 to applicants "seeking admission" at, or effectively at, the border; §1226(a) serves as the default detention authority for §1229a proceedings and maintains IJ bond jurisdiction. *See* 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). The Respondents' new interpretation ignores that framework. The result is unlawful and continued detention without an individualized bond analysis of noncitizens categorically misclassified.

79.     The Respondents' interpretation is also unlawful under the APA because it effectively rewrites the INA's detention framework. The Supreme Court has cautioned that agency implementation authority "does not include a power to revise clear statutory terms that turn out not to work in practice." *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014). Yet that is precisely what DHS and EOIR have done here: by treating long-present interior arrestees as subject to § 1225(b)(2)(A) mandatory detention solely on the basis of inadmissibility charging language and

---

[4] *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

regulatory labeling, the Respondents read the statute's "seeking admission" limitation out of § 1225 and render § 1226(a) irrelevant for broad categories of noncitizens arrested inside the United States. Because the Respondents' detention of Petitioner under § 1225(b)(2)(A) conflicts with the statute as written and as applied by courts in this Circuit, it is "not in accordance with law" and must be set aside. 5 U.S.C. § 706(2)(A).

80.    Independently, the Respondents' approach exceeds the authority Congress conferred. The APA requires courts to set aside agency action "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). DHS's July 8, 2025, interim guidance and EOIR's attempt to implement bond denials seek to create a mandatory detention scheme for interior-arrested, long-present noncitizens that Congress did not enact in § 1225. In other words, the Respondents are not merely interpreting statutory gaps; they are asserting detention authority beyond the statute's inspection-based trigger.

81.    That conclusion is reinforced by the final judgment in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). There, the court entered final judgment, declaring that the certified "Bond Eligible Class" members "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)," and vacated DHS's July 8, 2025, interim guidance "under the Administrative Procedure Act as not in accordance with law." That judgment confirms the core APA problem: DHS's guidance purported to expand § 1225(b)(2)(A) beyond what Congress authorized, and the court set it aside. In a subsequent order, the court vacated EOIR's continued reliance on *Matter of Yajure Hurtado* and precluded Respondents from relitigating the detention-authority issue. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026).

82.    Notwithstanding that vacatur, Respondents continue to apply the same statutory interpretation to individuals like Petitioner. Where an agency persists in enforcing a detention

classification that has been set aside as ultra vires, the APA requires judicial intervention. Section 1225(b)(2)(A) cannot be used to impose mandatory detention on a long-settled interior resident who was not "seeking admission" at the time of arrest.

83.     Because the Respondents' detention classification is "not in accordance with law" and "in excess of statutory authority," this Court should set aside the Respondents' application of § 1225(b)(2)(A) to Petitioner and order the Respondents to treat Petitioner as detained under § 1226(a), with bond consideration and an IJ custody redetermination hearing available under the governing regulations and constitutional standards.

E.  *The Respondents' Policy of Treating Interior Arrests as Mandatorily Detainable Under INA § 1225(b)(2)(A) Without a Bond Hearing Is Arbitrary and Capricious in Violation of the APA*

84.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

85.     A court must "hold unlawful and set aside" agency action that is "arbitrary [or] capricious." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if, among other things, the agency (i) relied on factors Congress did not intend it to consider, (ii) entirely failed to consider an important aspect of the problem, (iii) offered an explanation that runs counter to the evidence, or (iv) made a decision so implausible it cannot be ascribed to agency expertise or a difference in view. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). When an agency changes position, it must at least show awareness of the change, provide good reasons, and address serious reliance interests the prior policy engendered. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). The Second Circuit applies this deferential framework but still requires a "satisfactory explanation" and a "rational connection between the facts found and the choice made," and it will set aside an action that is arbitrary or capricious under § 706(2)(A). *Nat. Res. Def. Council, Inc. v. FAA*, 564 F.3d 549 (2d Cir. 2009) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983)).

24

86. The Respondents' § 1225(b)(2) bond-denial approach is arbitrary and capricious for several reasons because it effects a sweeping bond-denial classification decision without reasoned decision-making. First, the Respondents are using a categorical rule that converts interior arrests of long-present noncitizens into mandatory § 1225(b)(2) detention, eliminating the bond framework Congress created in § 1226(a). That kind of structural rewrite is exactly the sort of "important aspect of the problem" *State Farm* requires the agency to grapple with, not ignore,

87. Secondly, it is an unexplained (or insufficiently explained) shift with predictable reliance consequences. When Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the Immigration and Naturalization Service and EOIR issued the foundational implementing regulations in a 1997 interim rule: "Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312 (Mar. 6, 1997). Over the ensuing decades, the agency's detention regulations have continued to provide that, after DHS makes an initial custody/bond decision, a respondent may seek an IJ custody redetermination under 8 C.F.R. § 236.1(d)(1), reflecting the settled understanding that § 1226(a) is the operative detention authority for noncitizens already in the United States pending removal proceedings, absent a specific mandatory-detention provision. Therefore, DHS's July 8, 2025, guidance is a sharp departure from thirty years of consistent implementation. Under *Encino Motorcars* and *State Farm*, an agency must acknowledge such a shift and provide a reasoned explanation, including addressing reliance interests and the obvious alternative of continuing to use the long-established § 1226(a) bond framework; unexplained departures from longstanding policy are arbitrary and capricious.

88. Third, the Petitioner's detention is arbitrary in light of the *Maldonado Bautista* final judgment. The *Maldonado Bautista* court reveals that the Respondents have instructed immigration judges to disregard *Maldonado Bautista* and to continue denying bond jurisdiction based on the same

§ 1225(b)(2) theory the court rejected. An agency's decision to persist in applying a policy that a federal court has already declared unlawful—without acknowledging the judgment, explaining its reasoning, or altering its approach—reflects precisely the sort of unreasoned decisionmaking the APA forbids. *See Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). Continuing to apply the bond-denial scheme to the Petitioner, a putative class member, in the face of binding declaratory relief further underscores the arbitrariness of the Respondents' action and independently warrants relief under 5 U.S.C. § 706(2)(A).

### F. The Respondents' Initial Seizure of the Petitioner Violated the Petition's Fourth Amendment Rights

89.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

90.    The Fourth Amendment protects against unreasonable searches and seizures of both citizens and noncitizens. *Cotzojay v. Holder*, No. 11-4916 (2d Cir. 2013). For seizures of persons, the Fourth Amendment requires that "before (a police officer) places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *United States v. Vasquez*, 638 F.2D 507, 520 (2d. Cir. 1980).

91.    Here, ICE officers followed Petitioner as he left for work and seized him in the front yard of his Long Island residence. According to Petitioner's partner, officers did not present a judicial warrant or any document authorizing entry onto the property or arrest. There was no contemporaneous border crossing, no outstanding criminal warrant, and no articulable basis for suspecting criminal activity. Petitioner has no criminal history and was not engaged in unlawful conduct at the time of arrest.

92.    If officers entered the curtilage of Petitioner's home to effectuate the arrest without a judicial warrant, exigent circumstances, or consent, that entry itself violates the Fourth Amendment. *See Cotzojay*, 725 F.3d at 182–84 (recognizing heightened Fourth Amendment protection for entry

26

into a home and its curtilage in the immigration context). Even assuming arguendo that officers relied on an administrative immigration warrant, such warrants do not authorize warrantless entry into a home or its curtilage absent consent or exigency.

93.    Moreover, the record reflects no individualized, articulable suspicion justifying the initial stop. A seizure based solely on race or ethnicity is constitutionally impermissible. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 885–87 (1975) (holding that apparent Mexican ancestry alone does not justify a stop). If Petitioner was targeted solely because of his appearance as a Latino man, the seizure was unreasonable under the Fourth Amendment.

94.    An unlawful arrest in violation of the Fourth Amendment cannot serve as the foundation for continued detention. Where the Government's custody flows directly from an unconstitutional seizure, habeas relief is appropriate. The Fourth Amendment violation here compounds the statutory and APA defects already described and provides an independent constitutional basis for relief.

G.    *The Respondents' No-Bond Detention of the Petitioner Violates His Fifth Amendment Due Process Rights*

95.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

96.    The government cannot deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. According to *Zadvydas v. Davis*, freedom from imprisonment "from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. 533 U.S. 678, 690, (2001). Due process demands procedures that reliably justify confinement and ensure a "meaningful time" and "meaningful manner" to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Respondents have and will continue to deprive the Petitioner of his physical liberty through ongoing civil detention while simultaneously denying him any meaningful opportunity to seek release on bond, based on Respondents' erroneous position that the Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). That

posture violates due process in at least two independent ways.

97.     As a baseline constitutional matter, the government must have lawful statutory authority for civil detention, and courts must not lightly presume broad detention power where liberty is at stake. *Zadvydas*, 533 U.S. at 690 (warning that indefinite or unauthorized detention raises serious constitutional problems). The Supreme Court has explained that the INA establishes different detention authorities for different contexts: § 1225 governs detention of certain noncitizens "seeking admission," while § 1226 governs detention of noncitizens already in the country pending removal proceedings. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Petitioner was arrested in the interior of New York, after twenty-two (22) years of his initial entry into the United States. He was not stopped at a port of entry, not encountered during an inspection, and not "seeking admission," at the time of the arrest. The Respondents' decision to treat him as a § 1225(b)(2)(A) mandatory detainee and deny him any bond process, therefore, compounds the statutory defect into a constitutional one. This results in the Petitioner being held under an inspection-based mandatory detention regime that does not lawfully apply to him, resulting the deprivation of his liberty and his due process rights.

98.     The Petitioner's detention has also violated his procedural due process. Whether the procedures afforded in a civil detention scheme satisfy due process is governed by the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, courts weigh: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation under the challenged procedures and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens. *Id.* Applying those factors here confirms that the Respondents' categorical denial of bond consideration violates the Fifth Amendment.

99.     The first factor weighs heavily in Petitioner's favor. Civil immigration detention implicates a profound liberty interest. *Zadvydas*, 533 U.S. at 690. Petitioner is detained without any individualized opportunity to seek release despite his longstanding residence, absence of criminal

28

history, compliance with immigration proceedings, and serious medical condition requiring follow-up cardiac care. The Second Circuit has recognized that this liberty interest is fundamental and that prolonged detention without meaningful process raises serious constitutional concerns. *Velasco Lopez v. Decker*, 978 F.3d 842, 851–52 (2d Cir. 2020).

100. The second factor strongly favors Petitioner because the § 1225(b)(2) classification categorically denies bond based solely on legal labeling, without any individualized determination of danger or flight risk. This creates a substantial risk of erroneous deprivation. In *Velasco Lopez*, the Second Circuit held that due process is violated where detention continues without the Government ever bearing the burden of justifying incarceration. 978 F.3d at 852–54. Here, Respondents' position forecloses any hearing at which the Government must meet that burden.

101. The third factor does not justify the deprivation. The Government has legitimate interests in ensuring attendance at removal proceedings and protecting the community. But those interests are fully accommodated through individualized bond hearings under § 1226(a), where the Government may seek detention upon a showing of danger or flight risk. Administrative convenience or categorical detention does not outweigh the fundamental liberty interest at stake. *Zadvydas*, 533 U.S. at 690.

102. Balancing the *Mathews* factors, the categorical denial of bond to Petitioner—based on an erroneous statutory classification—cannot be reconciled with the Fifth Amendment. Due process requires, at minimum, a meaningful, individualized hearing at which the Government bears the burden of justifying continued detention. Because Respondents have denied Petitioner that process, his ongoing confinement violates the Fifth Amendment.

H. *The Court Should Order Immediate Release (Not Merely a Bond Hearing) Because Unlawful Executive Detention, and a "Do-Over" Bond Hearing Would Not Cure the Ongoing Constitutional Harm*

103. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as is fully set forth herein.

104. "Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the "traditional function of the writ" is to secure release from illegal custody). Congress likewise directs habeas courts to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Where the detention authority invoked is unlawful, ordering release is not extraordinary. It is the remedy that restores liberty and prevents the Government from continuing to benefit from its own legal error.

105. A default-to-bond remedy would be inadequate here because it risks perpetuating the Petitioner's unlawful detention through an unpayable bond or a flight-risk narrative that is untethered to his actual conduct. A remedial order that merely instructs the Respondents to provide a bond hearing can function as an agency "reset," permitting continued detention through a high bond amount beyond the Petitioner's ability to pay or an adverse discretionary outcome, even though the predicate detention basis was unlawful from the outset. Habeas exists to end unlawful custody, not to give the Government a second chance to justify an incarceration it lacked authority to impose in the first place. *Munaf*, 553 U.S. at 693.

106. Additionally, as discussed above, the *Mathews* factors strongly favor immediate release when the Government's chosen detention basis is unlawful and the alternative remedy risks continued erroneous incarceration. When the Respondents apply an unlawful statutory scheme to impose no-bond detention, the risk of erroneous deprivation is already realized. A mere bond hearing does not eliminate that risk if it predictably results in continued detention through an unpayable bond or the mischaracterization of lawful employment mobility as "flight." The safeguard that reliably cures the constitutional injury is ending the unlawful detention now. The Government's legitimate interests (appearance and community safety) can be fully protected through supervision and conditions of release tailored to the case, which is exactly why Congress built a conditional-release framework into

30

§ 1226(a). Immediate release subject to reasonable conditions is a less restrictive, constitutionally sound alternative to continued detention premised on an unlawful classification. Balancing these factors favors release, not a remedy that risks continued incarceration under a different label. 28 U.S.C. § 2243.

107. Equity and due process counsel against a remedy that rewards unlawful detention by allowing the Respondents to "fix" the error only after months of confinement. The Court should not adopt a remedy that signals to the Government that it may unlawfully arrest and hold a person, litigate the legality later, and then retain custody by pivoting to a new discretionary process (bond) after the fact. Due process is not satisfied by after-the-fact procedures that risk perpetuating the deprivation of liberty. Where detention is unlawful, habeas relief should be effective, immediate, and liberty-restoring. *Preiser*, 411 U.S. at 484–85; *Munaf*, 553 U.S. at 693.

108. If the Court is not inclined to order immediate release, it should at minimum order conditional release under reasonable supervision terms, or require that any custody redetermination hearing occur promptly and include express protections to ensure the remedy is meaningful: the Government bears the burden by clear and convincing evidence, consideration of alternatives to detention is mandatory, and any financial condition must reflect ability to pay so that liberty is not denied by price. These guardrails flow from the same due process principles that underlie civil detention review and prevent the bond process from becoming a mechanism for continued unconstitutional confinement.

### PRAYER FOR RELIEF

**WHEREFORE**, Petitioners respectfully request that this Court:

109. Assume jurisdiction over this matter to 28 U.S.C. § 2241 and 28 U.S.C. § 1331;

110. Issue a writ of habeas corpus requiring that, within one day, Respondent release

Petitioner[5],

111. Declare that the Respondents' detention of Petitioner under 8 U.S.C. § 1225(b)(2)(A), is unlawful because Petitioner was arrested in the interior of the United States and was not "seeking admission," and therefore is properly detained, if at all, under 8 U.S.C. § 1226(a);

112. Declare that Petitioner is a member of the *Maldonado Bautista* Bond Eligible Class and that Respondents must comply with the classwide declaratory judgment by treating Petitioner as detained under 8 U.S.C. § 1226(a), and not under 8 U.S.C. § 1225(b)(2)(A);

113. Hold unlawful and set aside the Respondents' application of the § 1225(b)(2)(A) mandatory detention as it relates to Petitioner as "not in accordance with law" and "in excess of statutory authority," and arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C);

114. Order the Respondents to release Petitioner immediately from ICE custody;

115. In the alternative to immediate release, order the Respondents, within seven (7) days, to provide Petitioner a prompt § 1226(a) bond hearing before an Immigration Judge at which:

a. The Government bears the burden to prove by clear and convincing evidence that continued detention is necessary because Petitioner is a danger or flight risk;

b. The Immigration Judge considers alternatives to detention and Petitioner's ability to pay; and

c. The Immigration Judge makes individualized, reasoned findings on the record;

116. Enjoin the Respondents from continuing to detain Petitioner under § 1225(b)(2)(A) or otherwise denying him bond jurisdiction based on the § 1225(b)(2) theory, absent a material change in law or circumstances and lawful statutory predicate;

117. Enjoin the transfer or removal of Petitioner outside this District while this action is

---

[5] See, e.g., *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931 (S.D.N.Y. July 13, 2025); *O-J-M- v. Bostock*, 2025 WL 1943008, at *1 (D. Or. July 14, 2025), *Ulloa Montoya v. Bondi*, No. 25-CV-06363, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025).

32

pending, or, at a minimum, require at least seventy-two (72) hours' written notice to counsel before any transfer, so that any ordered relief is meaningful and the Court's jurisdiction is preserved;

118. Order expedited briefing and/or issue an Order to Show Cause as the Court deems appropriate;

119. Award Petitioner his reasonable attorneys' fees and costs, to the extent authorized by law, including under the Equal Access to Justice Act, 28 U.S.C. § 2412, if applicable;

120. Waive any security under Fed. R. Civ. P. 65(c), or set a nominal bond, should the Court grant injunctive relief; and

121. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Joshua R. Stickell, Esq. (NY SBN # 6254437)
Rivera Julka Law Group, PC.
17 W. Main Street,
Bay Shore, NY 11706
Telephone: (631) 647-9040
Email: joshua@riverajulka.com

33